IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation,<br><br>    Plaintiff,<br><br><br><br>        vs.<br><br><br>SECURITY NATIONAL MORTGAGE COMPANY, a Utah corporation,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br>Case No. 2:11-CV-519 TS |

This matter is before the Court on Defendant Security National Mortgage Company's Motion for Summary Judgment. For the reasons discussed below, the Court will deny the Motion.

## I. BACKGROUND

On April 15, 2005, Lehman Brothers Bank FSB ("LBB") entered into a Loan Purchase Agreement ("LPA") with Security National Mortgage Company ("Security National").[1]  Under

---

[1] Docket No. 37 Ex. 1.

1

the LPA, LBB agreed to purchase certain mortgage loans from Security National.  The LPA, which incorporated the Seller's Guide of LBB's agent Aurora Loan Services, placed certain duties and obligations on the parties with respect to the sale and purchase of the mortgage loans. The LPA specifically states that the "Agreement shall bind and inure to the benefit of and be enforceable by the Seller [Security National] and LBB and their respective successors and assigns."[2]

> The Seller's Guide further states:
>
> In addition to Purchaser's right to assign its rights and duties under the Loan Purchase Agreement and the Seller's Guide, Seller agrees that Purchaser separately may assign to any other party any or all representations, warranties or covenants made by Seller to Purchaser in the Seller's Guide and Loan Purchase Agreement, along with any or all of the remedies available against Seller for Seller's breach of any representation, warranty or covenant, including, without limitation, the repurchase and indemnification remedies.  Any such party shall be an intended third party beneficiary of these representations, warranties, covenants and remedies.[3]

Security National sold certain mortgage loans to LBB under the LPA and Seller's Guide. It is alleged that, with respect to certain loans, Security National breached its obligations under the LPA and Seller's Guide.

On December 17, 2007, LBB, Aurora Loan Services LLC, and Security National entered into an Indemnification Agreement.[4]  The Indemnification Agreement arose out of a concern that Security National had breached the LPA and Seller's Guide with respect to certain loans.  Under

---

[2]*Id.*

[3]*Id.* Ex. 2, Section 701.

[4]*Id.* Ex. 4.

the Indemnification Agreement, Security National agreed to indemnify LBB and Aurora on those

loans.

> The Indemnification Agreement provides:
>
> Should the Seller [Security National] fail to remit any of the payments specified in Paragraphs 1 and/or 3 of this Section 5, LBB and/or Aurora may declare this Agreement null and void and, except as to those Losses that shall have been previously released and discharged as set forth herein, shall be entitled to enforce all rights and remedies against the Seller under the Purchase Agreement and Seller's Guide.[5]
>
> The Indemnification Agreement further states:
>
> [E]xcept as provided in this Agreement, LBB and/or Aurora's exercise of any right or remedy under this Agreement shall not limit its exercise of any other right or remedy provided to LBB and/or Aurora by the Seller's guide, the Purchase Agreement, applicable law, by any other agreement to which it and the Seller are parties to or otherwise.[6]

In addition, the Indemnification Agreement provides that "[n]othing in this Agreement

shall be construed to waive LBB's and/or Aurora's requirement for the Seller to strictly perform

its obligations under the Purchase Agreement and Seller's Guide in the past, present, and

future."[7]

LBB sold the loans it purchased from Security National under the LPA to Plaintiff

Lehman Brothers Holdings Inc. ("LBHI"), which is the grandparent corporation to LBB.  The

sales of the loans from LBB to LBHI occurred between August 2006 and May 2008.

---

[5]*Id.* at Section 5, ¶ 5.

[6]*Id.* at Section 6.

[7]*Id.* at Section 7.

On September 2, 2008, LBB and LBHI entered into an Assignment Agreement, whereby LBB assigned its rights under certain agreements, including the LPA and Seller's Guide, to LBHI.[8]  Under the Assignment Agreement, LBB agreed to assign, transfer, and convey to LBHI "all of its rights in and to [the LPA], including rights in and to any or all representations, warranties or covenants made by [Security National] to [LBB] . . . along with any or all of [LBB's] remedies available against [Security National] for [Security National's] breach of any representation, warranty or covenant . . . ."[9]  Thus, according to the Assignment Agreement, LBHI was "entitled to exercise all such rights and remedies of [LBB] under the Seller's Guide or Agreements, as if the Assignee had been a party to each such agreement."[10]

On March 28, 2011, LBB purported to assign its rights under the Indemnification Agreement to LBHI.[11]  On June 2, 2011, LBHI provided Security National with written notification that it was declaring the Indemnification Agreement null and void, except as to those losses that were previously released and discharged.

Security National filed suit against Aurora Bank FSB (formerly known as LBB) and Aurora Loan Services LLC on May 11, 2011.  LBHI is not a party to that suit.  On December 24, 2014, the Honorable David Nuffer issued an amended order granting Security National's motion for summary judgment.  Judge Nuffer ruled that LBB and Aurora breached the Indemnification

---

[8]*Id.* Ex. 17.

[9]*Id.* at Section 1(a).

[10]*Id.* at Section 1(b).

[11]*Id.* Ex. 15.

Agreement by utilizing certain funds for the benefit of LBHI "as LBHI was not entitled under the Indemnification Agreement to any indemnity for LBHI's losses."[12]

On June 8, 2011, LBHI brought this action against Security National.  In its Amended Complaint, LBHI asserts claims against Security National for breach of the LPA and Seller's Guide.  Security National seeks summary judgment on LBHI's claims.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.[13]  In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[14]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[15]

## III.  DISCUSSION

Security National raises the following arguments in its Motion.  First, Security National argues that the LPA and the Indemnification Agreement are mutually exclusive and, since it argues that the Indemnification Agreement is not null and void, the claims asserted under the

---

[12]*Security Nat'l Mortg. Co. v. Aurora Bank FSB*, Case No. 2:11-CV-434 DN, 2014 WL 7366063, at *16 (D. Utah Dec. 24, 2014).

[13]FED. R. CIV. P. 56(a).

[14]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[15]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

LPA cannot stand.  Second, and alternatively, Security National argues that, assuming the Indemnification Agreement is null and void, LBB suffered no loss on the loans at issue prior to them being sold to LBHI.  Therefore, Security National argues that there was nothing to assign to LBHI.

The first issue is central to the case before Judge Nuffer.  Judge Nuffer has ruled in favor of Security National, finding that "Lehman Bank and Aurora Loan Services had no right to utilize funds of Security National in the deposit account for the benefit of LBHI, as LBHI was not entitled under the Indemnification Agreement to any indemnity for LBHI's losses."[16]

Security National argues that this finding necessitates the dismissal of this action.  Security National argues that LBHI's claim in this suit is dependent on the Indemnification Agreement being null and void.  Because the Indemnification Agreement is not null and void, LBHI cannot assert claims under the LPA.

The Court disagrees.  Even if the Indemnification Agreement is not null and void, that Agreement does not limit LBHI's ability to pursue claims under the LPA and Seller's Guide.

To the contrary, the Indemnification Agreement states:

> [E]xcept as provided in this Agreement, LBB and/or Aurora's exercise of any right or remedy under this Agreement shall not limit its exercise of any other right or remedy provided to LBB and/or Aurora by the Seller's guide, the Purchase Agreement, applicable law, by any other agreement to which it and the Seller are parties to or otherwise.[17]

---

[16]*Security Nat'l Mortg. Co. v. Aurora Bank FSB*, Case No. 2:11-CV-434 DN, 2014 WL 7366063, at *16 (D. Utah Dec. 24, 2014).

[17]Docket No. 37 Ex. 4, at Section 6.

In addition, the Indemnification Agreement provides that "[n]othing in this Agreement shall be construed to waive LBB's and/or Aurora's requirement for the Seller to strictly perform its obligations under the Purchase Agreement and Seller's Guide in the past, present, and future."[18]

Security National argues that Section 5 of the Indemnification Agreement clarifies that declaring that Agreement null and void is a condition precedent to suit. That provision states:

> Should the Seller fail to remit any of the payments specified in Paragraphs 1 and/or 3 of this Section 5, LBB and/or Aurora may declare this Agreement null and void and, except as to those Losses that shall have been previously released and discharged as set forth herein, shall be entitled to enforce all rights and remedies against the Seller under the Purchase Agreement and Seller's Guide.[19]

While this language appears to provide some support for Security National's position, a close reading reveals that declaring the Indemnification Agreement null and void is not a condition precedent to a suit under the LPA. Section 5's statement allowing LBB and/or Aurora to declare the Indemnification Agreement null and void is permissive. Section 5 states that LBB and/or Aurora *may* declare the Indemnification Agreement null and void if Security National fails to remit payments, but it does not require LBB and/or Aurora to do so in order to bring suit. Section 5 goes on to state that LBB and/or Aurora "*shall* be entitled to enforce all rights and remedies against the Seller under the Purchase Agreement and Seller's Guide."[20]  Thus, while LBB and/or Aurora may declare the Indemnification Agreement null and void should Security

---

[18] *Id.* at Section 7.

[19] *Id.* at Section 5.

[20] *Id.* (emphasis added).

7

National fail to remit payments, they shall be entitled to enforce all right and remedies against Security National under the LPA and Seller's Guide if Security National failed its obligations. Thus, nothing in the Indemnification Agreement requires it be declared null and void before suit may be brought. This conclusion is supported by Sections 6 and 7 of the Indemnification Agreement, which clearly state that LBB and/or Aurora maintain the right to pursue rights and remedies under the LPA and Seller's Guide. Thus, the Court must focus on LHBI's ability to bring suit under the LPA and Seller's Guide, and the purported assignment by LBB of its rights under the LPA and Seller's Guide to LBHI.

The following undisputed facts are relevant to this issue. Security National and LBB entered into the LPA which incorporated the Seller's Guide, whereby LBB agreed to purchase certain loans from Security National. Under the LPA and Seller's Guide, Security National made certain representations, warranties, and covenants concerning the loans sold to LBB. LBB then sold those loans to LBHI. Later, LBB assigned its rights under the LPA and Seller's Guide to LBHI.

Security National argues that, since the loans were sold to LBHI prior to the assignment of the LPA and Seller's Guide, there were no rights for LBB to assign. Security National argues that since LBB was fully compensated by LBHI, LBB had no right to demand payment from Security National. Security National argues "the bank having been made whole, it could not then assign to LBHI a right to demand any payments from Security National that it did not have."[21]

---

[21]Docket No. 36, at 17.

Security National's argument ignores both the agreement between the parties and what was assigned to LBHI by the Assignment Agreement.  Security National's argument may have more appeal if it only sold loans to LBB, but the transaction was not so limited.  In addition to selling loans to LBB, Security National made certain representations, warranties, and covenants with respect to those loans.  It appears that LBB initially sold the loans to LBHI, but kept the right to enforce the LPA and Seller's Guide.  The Assignment Agreement then assigned all of LBB's rights under the LPA and Seller's Guide to LBHI.

The fact that LBB sold the loans to LBHI and was paid for those loans does nothing to relieve Security National's obligations under the LPA and Seller's Guide.  The terms of the LPA make clear that LBB could not only assign its rights under the LPA and Seller's Guide, but could also separately assign the representations, warranties, and covenants made by Security National to LBB.  As set forth above, Security National specifically agreed that LBB could separately assign "to any other party any or all representations, warranties or covenants made by [Security National] to [LBB] in the Seller's Guide and Loan Purchase Agreement."[22]  Security National's argument focuses on the fact that, at the time of the assignment, there was no loss to LBB.  While this fact is important under the Indemnification Agreement, it is irrelevant to the LPA, the Seller's Guide, and the Assignment Agreement.  These agreements, unlike the Indemnification Agreement and the assignment of that Agreement, are not limited to losses.  Rather, the LPA and the Seller's Guide set out the rights and duties with respect to the parties' sale and purchase of

---

[22]Docket No. 37 Ex. 2, Section 701.

mortgages and the Assignment Agreement assigns all legal rights that LBB had under the LPA

and Seller's Guide to LBHI.

This fact distinguishes this case from the Indemnification Agreement addressed by Judge

Nuffer.  The Indemnification Agreement was specifically limited to losses, a defined term under

that agreement.  Because the Indemnification Agreement only covered losses of Lehman Bank

and Aurora Loan Services and those entities suffered no losses, Judge Nuffer held that summary

judgment in favor of Security National was proper.  As stated, the contract language in this case

is not so limited.

In support of the Court's interpretation of these agreements, the Court notes that other

courts have rejected arguments similar to the one made by Security National in other cases

involving LBHI.  For example, in *Lehman Brothers Holdings, Inc. v. Cornerstone Mortgage

Company*,[23] a mortgage lender argued "that LBB did not suffer damages from [the mortgage

lender's] breach" "and that because LBH 'stands in the shoes' of Lehman Brothers Bank, it

cannot assert a claim for damages."[24]  The court rejected this argument, noting that "LBH

acquired the . . . [l]oans as well as the rights under the Loan Purchase Agreement, Seller's Guide,

and Indemnification Agreements by assignment."[25]  As a result, "LBH now stands in LBB's

shoes and may assert LBB's rights under the Agreements."[26]  While the court noted that LBB

---

[23]2011 WL 649139 (S.D. Tex. Feb. 10, 2011).

[24]*Id.* at *16.

[25]*Id.*

[26]*Id.*

could no longer assert its rights under the agreements or claim damages against the mortgage lender, "LBH may assert its assigned rights under the Loan Purchase Agreement and Seller's Guide, including the right to seek recovery of damages incurred after the assignment."[27]  In support of this conclusion, the court, though relying on New York law, cited a case from the Utah Supreme Court.  There, the Utah Supreme Court stated, "[w]hile it is correct that an assignee stands in the shoes of its assignor and cannot stand in a better position than its assignor, an assignee should nevertheless be given the chance to fully and fairly litigate the rights it claims to have acquired by assignment."[28]

At oral argument, Security National pointed to certain factual differences between the case before the Court and *Cornerstone*.  However, these differences do not change the straightforward contract interpretation involved in both cases.

Other courts have also reached the conclusion that LBHI has the right to assert claims under the LPA and Seller's Guide.  In *Lehman Brothers Holdings, Inc. v. National Bank of Arkansas*,[29] a bank argued that LBHI had no right to sue on the LPA "because LBB had assigned all the loans to LBHI without recourse years earlier."[30]  Similar to the argument made by Security National in this case, the bank argued "that because at the time of the assignment [the bank] was not obligated to LBB, LBB had no rights or claims to the repurchase or indemnity provisions to

---

[27]*Id.*

[28]*Sunridge Dev. Corp. v. RB&G Eng'g, Inc.*, 230 P.3d 1000, 1003 (Utah 2010).

[29]875 F. Supp. 2d 911 (E.D. Ark. 2012).

[30]*Id.* at 918.

pass to LBHI."[31]   The court rejected this argument, finding that the assignment of the LPA "assigned to LBHI the contractual rights in the loans at issue."[32]

Similarly in *Lehman Brothers Holdings, Inc. v. PMC Bancorp*,[33] the District Court for the Central District of California rejected a challenge to the assignment agreement.[34]   The court noted that the assignment clearly transferred the claims against the bank from LBB to LBHI and that the underlying purchase agreement specifically contemplated such an assignment.[35]

The same conclusion is warranted here.   In this case, LBB assigned to LBHI all of the rights that LBB had under the LPA and Seller's Guide.   Based on this assignment, LBHI stands in the shoes of LBB and can assert the same rights under the LPA and Seller's Guide that LBB had.   It stands to reason that if LBB still owned the loans in question, they could assert claims against Security National under the LPA and Seller's Guide.   The sale of those loans and the assignment of rights under the LPA and Seller's Guide now allows LBHI to do the same.

IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 35) is DENIED.

---

[31]*Id.*

[32]*Id.*

[33]2013 WL 1095458 (C.D. Cal. Mar. 8, 2013).

[34]*Id.* at *5.

[35]*Id.*

DATED   April 21, 2015.

BY THE COURT:

TED STEWART
United States District Judge