IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SECURITY NATIONAL MORTGAGE COMPANY, a Utah corporation,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:11-CV-519 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant's Motion for Summary Judgment. For the reasons discussed below, the Court will deny Defendant's Motion.

I. BACKGROUND

On April 15, 2005, Lehman Brothers Bank FSB ("LBB") entered into a Loan Purchase Agreement ("LPA") with Security National Mortgage Company ("Security National"). Under the LPA, LBB agreed to purchase certain mortgage loans from Security National. The LPA, which incorporated the Seller's Guide of LBB's agent Aurora Loan Services ("Aurora"), placed certain duties and obligations on the parties with respect to the sale and purchase of the mortgage loans.

Security National sold certain mortgage loans to LBB under the LPA and Seller's Guide. It is alleged that, with respect to certain loans, Security National breached its obligations under the LPA and Seller's Guide. The first allegedly defective loan was sold on May 16, 2006.

1

On December 17, 2007, LBB, Aurora, and Security National entered into an Indemnification Agreement.[1]  The Indemnification Agreement arose out of a concern that Security National had breached the LPA and Seller's Guide with respect to certain loans.  Under the Indemnification Agreement, Security National agreed to indemnify LBB and Aurora on those loans.

LBB sold the loans it purchased from Security National under the LPA to Plaintiff Lehman Brothers Holdings Inc. ("LBHI"), which is the grandparent corporation to LBB.  The sales of the relevant loans from LBB to LBHI occurred between August 2006 and May 2008.

On September 2, 2008, LBB and LBHI entered into an Assignment Agreement, whereby LBB assigned its rights under certain agreements, including the LPA and Seller's Guide, to LBHI.

On June 8, 2011, LBHI brought this action against Security National.  In its Amended Complaint, LBHI asserts claims against Security National for breach of the LPA and Seller's Guide.  Security National now argues that LBHI's claims are barred by the applicable statute of limitations.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence

---

[1] Claims related to the Indemnification Agreement are currently before the Honorable David Nuffer.  *See Sec. Nat'l Mortg. v. Aurora Bank FSB, et al.*, Case No. 2:11-CV-434 DN.

[2] Fed. R. Civ. P. 56(a).

presented.[3] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[4]

### III. DISCUSSION

The Court notes that many of the arguments raised by Defendant's Motion for Summary Judgment were recently addressed by the Tenth Circuit Court of Appeals in *Lehman Brothers Holdings, Inc. v. Universal American Mortgage Co. LLC*.[5] Though an unpublished decision, the Court finds the decision persuasive as it involves one of the same parties present in this case and addresses substantially similar agreements. The Court, therefore, rejects Plaintiff's argument that it should decline to follow the reasoning of that case.

The first question the Court must determine is what law applies. The LPA provides that "[t]his Agreement and the Seller's Guide shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York, except to the extent preempted by Federal law."[6] The Seller's Guide provides that "[t]he Loan Purchase Agreement shall be construed in accordance with the substantive law of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such law without regard for the principles of conflict of laws."[7]

---

[3] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[4] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[5] --- F. App'x ---, 2016 WL 325126 (10th Cir. Jan. 27, 2016).

[6] Docket No. 37 Ex. 1, Section 8.

[7] *Id.* Ex. 2, Section 713.1.

The LPA further states that "[i]n the event of any conflict, inconsistency or discrepancy between any of the provisions of the Seller's Guide and any of the provisions of this Agreement, the provisions of this Agreement shall control and be binding upon LBB and the Seller."[8] The Seller's Guide similarly states that "[i]n the case of any inconsistency between this Seller's Guide and the Loan Purchase Agreement, the terms of the Loan Purchase Agreement shall control."[9]

Based upon this language, the Court must apply New York law. New York provides for a six-year statute of limitations for contract claims.[10] Security National, however, argues that the Court should apply Delaware's three year statute of limitations, using New York's borrowing statute.

New York's borrowing statute states:

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.[11]

LBHI first argues that the borrowing statute does not apply because the choice-of-law provisions preclude application of the borrowing statute. In support, LBHI argues that New York's borrowing statute is a conflict-of-laws rule and the parties agreed that the agreements would be governed by New York law "without regard for the principles of conflict of laws."[12]

---

[8] *Id.* Ex. 1, Section 2.

[9] *Id.* Ex. 2, Section 713.4.

[10] N.Y. C.P.L.R. § 213.

[11] *Id.* § 202.

[12] Docket No. 37 Ex. 2, Section 713.1.

4

Whether New York's borrowing statute is a conflict-of-law rule is not an issue the Court needs to decide. The contract language relied upon by LBHI does not support its argument. As set forth above, the LPA provides that the LPA and the Seller's Guide are to be "determined in accordance with the laws of the State of New York, except to the extent preempted by Federal law."[13] There is no mention of an exclusion with regard to conflicts of law. That limitation is only found in the Seller's Guide and applies only to the Seller's Guide. The relevant provision of the Seller's Guide states that "[t]he Loan Purchase Agreement shall be construed in accordance with the substantive law of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such law without regard for the principles of conflict of laws."[14] Where there is a conflict or inconsistency between the LPA and the Seller's Guide, the LPA governs.[15] As there is an inconsistency between the two agreements, the Court must apply the terms of the LPA. The only exception to the choice of law provision of the LPA relates to preemption, which is not an issue here. Therefore, the Court must consider New York law, including the borrowing statute.[16]

The application of New York's borrowing statute depends on residency and accrual. The first step is determining whose residency matters. LBHI argues that the claims accrued to it, while Security National asserts that it is the residency of LBB that matters. Security National is correct in arguing that the Court looks to LBB's residency to resolve this issue. LBHI's claims in this case are dependent on the Assignment Agreement between LBB and LBHI. As LBB's

---

[13] *Id.* Ex. 1, Section 8.

[14] *Id.* Ex. 2, Section 713.1.

[15] *Id.* Ex. 1, Section 2; *Id.* Ex. 2, Section 713.4.

[16] *See Lehman Bros. Holdings, Inc.*, 2016 WL 325126, at *2–4.

assignee, LBHI stands in the shoes of LBB and is not entitled to stand in a better position. As a result, the Court must consider the residency of LBB.[17]

"When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss."[18] "In the case of a corporate plaintiff, that may be the state of incorporation or its principal place of business."[19] In reviewing the same arguments that are currently before the Court, the Tenth Circuit found that LBB is a resident of Delaware for purposes of New York's borrowing statute.[20] The Court finds the reasoning of the Tenth Circuit persuasive and similarly concludes that LBB is a Delaware resident.

Next, the Court considers where the claims accrued. As set forth above, "[w]hen an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss."[21] The court in *Global Financial Corp. v. Triarc Corp.*, stated that "CPLR 202 is designed to add clarity to the law and to provide the certainty of uniform application to litigants. This goal is better served by a rule requiring the single determination of a plaintiff's residence than by a rule dependent on a litany of events relevant to

---

[17] *See Portfolio Recovery Assoc., LLC v. King*, 927 N.E.2d 1059, 1061 (N.Y. 2010) ("Portfolio, as the assignee of Discover, is not entitled to stand in a better position than that of its assignor. We must therefore first ascertain where the cause of action accrued in favor of Discover."); *see also Lehman Bros. Holdings, Inc.*, 2016 WL 325126, at *4–5 (considering residency of LBB).

[18] *Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 485 (N.Y. 1999).

[19] *Oxbow Calcining USA Inc. v. Am. Indus. Partners*, 948 N.Y.S.2d 24, 30 (N.Y. App. Div. 2012).

[20] *Lehman Bros. Holdings, Inc.*, 2016 WL 325126, at *5–7.

[21] *Global Fin. Corp.*, 715 N.E.2d at 485.

the 'center of gravity' of a contract dispute."[22] Thus, a determination of LBB's residency necessarily determines the issue of where the claims accrued. Therefore, the Court finds that Plaintiff's claims accrued in Delaware and the Court applies Delaware's three-year limitations period.

Plaintiff's claims accrued in 2006 and 2007 when Security National sold the allegedly defective loans to LBB. However, suit was not brought until June 8, 2011. LBHI nevertheless argues its claims are timely under Delaware law based on the tolling provision in the Indemnification Agreement.[23] The Indemnification Agreement provides:

> In consideration for allowing the Seller [Security National] to enter into this Agreement rather than repurchase the Mortgage Loans, the statute of limitations (and other defenses based upon the passage of time) as to any and all claims, known or unknown, that LBB and/or Aurora may have against the Seller are hereby tolled as they relate to the Mortgage Loans.[24]

LBHI argues that its claims (which were assigned from LBB) were thus tolled from December 17, 2007, (the date of the Indemnification Agreement) to May 10, 2011 (the date that Security National refused to make a payment purportedly required by the Indemnification Agreement). LBHI further argues that the earliest allegedly defective loan was sold on or around May 16, 2006, approximately one year and seven months before the start of the tolling period. This action was brought on June 8, 2011, less than one month after tolling under the Indemnification Agreement ended. Thus, Plaintiff argues, less than two years have run on the statute of limitations.

---

[22] *Id.* at 485–86.

[23] Neither the Indemnification Agreement nor any similar agreement was before the Tenth Circuit in *Lehman Brothers Holdings, Inc. v. Universal American Mortgage Co. LLC*.

[24] Docket No. 37 Ex. 4, Section 8.

Security National makes three arguments in response.  First, Security National argues that the tolling agreement only applies to the Indemnification Agreement.  This argument, however, ignores the plain language of the provision, which tolls the limitations period as to "any and all claims, known or unknown, that LBB . . . may have against" Security National "as they relate to the Mortgage Loans."  The Mortgage Loans are those allegedly defective loans sold by Security National under the LPA and the Seller's Guide.  Thus, the Court finds that the tolling provision of the Indemnification relates specifically to Plaintiff's claims.  Moreover, Security National's argument ignores the purpose of the Indemnification Agreement.  That agreement arose out of concerns that Security National breached its obligations under the LPA and the Seller's Guide.  Rather than requiring Security National to repurchase the allegedly deficient mortgage loans, the parties entered into the Indemnification Agreement.  Limiting the tolling provision to claims brought pursuant to the Indemnification Agreement would ignore the purpose of that agreement and would frustrate the parties' intent.  The fact that in this action LBHI only asserts claims under the LPA and Seller's Guide does not alter this conclusion.

Second, Security National argues that the tolling provision of the Indemnification Agreement is unenforceable under New York law.  However, when using New York's borrowing statute, the Court also borrows the other state's rules as to tolling.[25]  Security National points to cases in which Delaware courts have held that parties may shorten, but not lengthen, a

---

[25] *Antone v. Gen. Motors Corp.*, 473 N.E.2d 742, 747 (N.Y. 1984) ("[I]n 'borrowing' a Statute of Limitations of another State, a New York court will also 'borrow' the other State's rules as to tolling.").

8

statute of limitations.[26] However, the cases relied upon by Security National involve parties entering into agreements extending the limitations period before a claim accrues. They do not address a situation, such as the one here, where the parties specifically agreed to toll the limitations period after a claim arose. As LBHI points out, several Delaware cases have held that a party may waive the applicable statute of limitations by written agreement.[27] By entering into the Indemnification Agreement, Security National manifested a clear intent to waive any statute of limitations defense. Therefore, the Court concludes that the tolling provision of the Indemnification Agreement is not barred by Delaware law.

Finally, Security National argues that the Indemnification Agreement was declared null and void. However, this argument assumes that, by declaring the Indemnification Agreement void, Plaintiff declared it void ab initio. There is no evidence to support this argument. Rather, the agreement was not declared void until June 2, 2011. This declaration does nothing to alter the statute of limitations analysis, as LBHI has conceded that the limitations period began to run again on May 10, 2011. Therefore, Plaintiff's claims are timely and Defendant's Motion must be denied.

---

[26] Docket No. 88, at 16 n.7. The continued validity of these cases is questionable given the recent amendment to Del. Code Ann. tit. 10, § 8106(c).

[27] *Studiengesellschaft Kohle, mbH v. Hercules, Inc.*, 748 F. Supp. 247, 251–52 (D. Del. 1990); *Bamdad Mech, Co., Ltd. v. United Techs. Corp.*, 586 F. Supp. 551, 553–54 (D. Del. 1984), *vacated on other grounds*, 760 F.2d 255 (3d Cir. 1985); *Dep't of Labor v. Red Rose Roofing, Inc.*, 2000 WL 970678, at *1 (Del. Super. Ct. Mar. 13, 2000).

IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 86) is DENIED. The parties are directed to submit a proposed scheduling order for the Court's signature within fourteen (14) days of this Order.

DATED this 23rd day of March, 2016.

BY THE COURT:

_____
Ted Stewart
United States District Judge