IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation<br><br>Plaintiff,<br>v.<br><br>SECURITYNATIONAL MORTGAGE COMPANY, a Utah corporation,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S PRETRIAL MOTIONS NOS. 1–3<br><br>Case No. 2:11-CV-519 TS |

This matter is before the Court on Defendant SecurityNational Mortgage Co.'s ("Security National") Pretrial Motions Nos. 1–3. For the reasons discussed below, the Court will deny the Motions.

## I.   DISCUSSION

Under the current scheduling order, all dispositive motions were required to be filed by September 4, 2012.[1] Security National filed its "Pretrial Motions" on October 20, 2016, more than four years after the dispositive motion deadline. With the exception of the motion regarding Article III standing, which may be challenged at any time, Security National's Motions are nothing more than untimely motions for summary judgment. Security National's arguments could have, and should have, been raised previously.

Federal Rule of Civil Procedure 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." "Demonstrating good cause under the rule 'requires the moving party to show that it has been diligent in attempting to meet the deadlines,

---

[1] Docket No. 31.

1

which means it must provide an adequate explanation for any delay.'"[2] Security National does not attempt to show good cause for its tardy motions, nor could it. Additionally, Security National has not bothered to seek the Court's consent to either file the Motion or amend the scheduling order.

Security National's dilatory conduct would be ample justification for the Court's denial of Defendant's Pretrial Motions Nos. 1 and 2. However, because the arguments relate to the ability of LBHI to bring claims, the Court will address them.

*1. Defendant's Pretrial Motion No. 1*

Security National argues that Lehman Brothers Holdings Inc. ("LBHI") has no direct standing under Section 711 of the Seller's Guide because LBHI is not a "Purchaser" as defined in Section 8 of the Seller's Guide. Section 8 defines Purchaser as "the entity set forth on the related Purchase Advice as the Purchaser, its successors and/or assigns, for a particular Mortgage Loan." LBB is the entity shown on the Purchase Advice. LBB sold the mortgage loans to LBHI and assigned to LBHI all its rights and remedies under the Purchase Agreement and the Seller's Guide for the mortgage loans at issue.

The Court need not decide whether LBHI is the Purchaser under the Seller's Guide. Even if LBHI is not considered a Purchaser at the time of the alleged breaches, LBHI may still bring claims as an assignee, whether it is now the Purchaser.[3]

---

[2] *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994)).

[3] *See Lehman Bros. Holdings v. Universal Am. Mortg. Co., LLC*, No. 14-1180, 2016 WL 325126, at *5 (10th Cir. Jan. 27, 2016) (unpublished) (finding that "Lehman Holdings can sue only as an assignee," because LHBI "is not suing for breaches committed after it acquired the loans. Instead, [LHBI] is suing for breaches allegedly committed against Lehman Bank, the assignor.").

LBHI argues that LBB and LBHI intended to assign the remedies against Security National at the time the loans were sold, and that the subsequent Assignment Agreement merely memorialized that earlier agreement.  Under New York law, "[n]o particular words are necessary to effect an assignment; it is only required that there be a perfected transaction between the assignor and assignee, intended by those parties to vest in the assignee a present right in the things assigned."[4]  While no special phraseology or form is required, "the assignor must be divested of all control over the thing assigned."[5]

LBHI argues that the fact that LBHI purchased the loans without recourse shows that LBHI "plainly relied on LBB's intended assignment of rights . . . to pursue the sellers for any breaches of the loan representations and warranties."[6]  While it is possible that LBB and LBHI intended from the outset that LBHI would seek remedies instead of LBB, there is simply not enough evidence that LBHI's purchase of the loans divested LBB of its rights and remedies under the LPA and Seller's Guide.  Therefore, the Court finds that LBHI did not acquire LBB's rights and remedies until the Assignment Agreement was executed, and LBHI could sue only as an assignee of LBB whether or not it is now a Purchaser.

2. *Defendant's Pretrial Motion No. 2*

Both parties agree that an assignee acquires only the remedies the assignor possessed. Security National argues that because LBHI compensated LBB for the loans, LBB was made whole and therefore had no remedy against Security National.  Security National raised this same

---

[4] *Leon v. Martinez*, 638 N.E.2d 511, 513 (N.Y. 1994).

[5] *In re Stralem*, 758 N.Y.S.2d 345, 347 (N.Y. App. Div. 2003) (citation and internal quotation marks omitted).

[6] Docket No. 126, at 9.

argument in its Motion for Summary Judgment and this Court rejected it,[7] noting that LBB's loss "is irrelevant to the LPA, the Seller's Guide, and the Assignment Agreement."[8]

Security National's argument that LBHI eliminated LBB's remedies against Security National by paying LBB for the loans or LBB's remedies is contrary to New York law. "The assignee of a cause of action is entitled to recover the same amount of damages as his assignor would have been entitled to recover, *without regard to the fact that the assignee has paid consideration for the assignment*."[9]

In an analogous context, the Second Circuit has held that "a healthcare provider that spends money on behalf of a patient for drugs and in return receives an assignment of the patient's rights to reimbursement . . . has standing as assignee in a lawsuit."[10] Here, LBHI spent money to pay LBB for allegedly defective loans and LBB gave LBHI its rights and remedies against Security National. Just as a hospital does not eliminate the right to seek reimbursement from an insurer by paying for a patient's care, LBHI did not erase the remedies under the LPA or Seller's Guide by paying for the loans.

3. *Defendant's Pretrial Motion No. 3*

Article III standing "is not subject to waiver."[11] Therefore, litigants may challenge Article III standing at all stages of litigation, and this Court must ensure that standing exists. The constitutional minimum of standing contains three elements. First, injury in fact—"an invasion

---

[7] *See* Docket No. 91, at 7.

[8] *Id.* at 9.

[9] *Nat'l Commercial Bank & Trust Co. v. Malik*, 339 N.Y.S.2d 605, 608 (N.Y. Sup. Ct. 1972) (emphasis added).

[10] *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 117 (2d Cir. 2002).

[11] *United States v. Hays*, 515 U.S. 737, 742 (1995).

of a legally protected interest" which is concrete and particularized as well as actual or imminent.[12] Second, "a causal connection between the injury and the conduct complained of."[13] Third, it must be likely that the injury will be redressed by a favorable decision.[14]

First, Security National claims that LBHI may not exercise any rights under the LPA or Seller's Guide because LBHI no longer held the loans at the time the Assignment Agreement was executed. Security National argues without citation that it is "axiomatic that someone who purports to own intangible repurchase rights . . . but owns none of the tangible property—here the Loans—to which these rights apply has no legally enforceable rights and therefore no standing to assert claims under these rights."[15] This assertion is far from axiomatic. This Court is aware of no rule that an assignee cannot have standing if the assignee no longer holds the underlying property in dispute. In *Sprint Communications Co. v. APCC Services, Inc.*, petitioners argued before the Supreme Court that because aggregators had no interest other than the fact that they were assigned claims, they would "not actually benefit from a victory in this case," and therefore "lack[ed] a 'personal stake' in the litigations outcome."[16] The Supreme Court rejected that argument, reasoning that "history and precedents . . . make clear that courts have long found ways to allow assignees to bring suit; that where assignment is at issue, courts—both before and after the founding—have always permitted the party with legal title alone to bring suit."[17]

---

[12] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

[13] *Id.*

[14] *Id.* at 561.

[15] Docket No. 116, at 12.

[16] *Sprint Commc'ns. Co. v. APCC Servs.*, 554 U.S. 269, 288 (2008).

[17] *Id.* at 285.

In addition, the Second Circuit implied that it was possible for an investment advisor who did not own the investments at issue to "demonstrate an 'injury-in-fact' through some other means, such as an assignment of claims."[18] Security National gives this Court no reason to believe that LBHI's ability to enforce Security National's obligations expired when it sold most of the loans—but not its rights and remedies under the LPA and Seller's Guide—to SASCO.

Security National again argues that LBB never suffered any "injury-in-fact" because LBB was made whole by re-selling the loans. This argument is identical to the one discussed above in response to Defendant's Pretrial Motion No. 2, and is unpersuasive for the same reasons.

Next, Security National argues that the Assignment Agreement did not assign any causes of action to LBHI because, under New York law, "when a party to a[n] . . . agreement assigns its contract rights in the agreement, ancillary rights of action that arise out of the agreement are not automatically transferred."[19] Security National relies on *Royal Mortgage Corp. v. FDIC* in support of its argument.[20] In that case, a purchase contract "precisely define[d] what was assigned to plaintiff," and did not include a particular cause of action that was being litigated. There, the court found that the contract did not assign the cause of action because it did not specifically include it.[21] The agreement in this case is easily distinguishable from that in *Royal Mortgage*. First, at the time of the assignment there was no outstanding litigation regarding Security National's alleged breaches. Second, the contract in *Royal Mortgage* detailed exactly what was being assigned and what was not. Here, the Assignment Agreement used broad

---

[18] *W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008).

[19] *Royal Mortg. Corp. v. FDIC*, 20 F. Supp. 2d 664, 667–68 (S.D.N.Y. 1998).

[20] *Id.*

[21] *Id.* at 670.

language to assign LBHI "all of the Assignor's remedies available against the Sellers for Sellers' breach of any representation, warranty or covenant under the Seller's Guide and/or Agreements."[22] This Court finds that the Assignment Agreement did include the causes of action brought by LBHI.

In sum, LBHI satisfies the "injury in fact" requirement for constitutional standing. Security National does not argue a deficiency in the other requirements. However, the Court finds a causal connection between Security National's alleged breaches and the injuries that underlie LBHI's causes of action, and that an award an award of damages would likely redress those injuries.

## II.  CONCLUSION

It is therefore

ORDERED that Defendant's Pretrial Motions Nos. 1–3 (Docket Nos. 114, 115, 116) are DENIED.

DATED this 22nd day of November, 2016.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[22] Docket No. 85-3, at 2.